## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MISTY VANZANDT, et al.,              )
                                     )
    Plaintiffs,                     )
                                     )
vs.                                  )     Case No.  CIV-06-0809-F
                                     )
STATE OF OKLAHOMA, *ex rel.*         )
the Oklahoma Department of Human     )
Services, et al.,                    )
                                     )
    Defendants.                     )

## <u>ORDER</u>

Defendants' motion to dismiss, filed August 28, 2006, is before the court. (Doc. no. 10.)  Plaintiffs have responded, defendants have replied, and the motion is fully briefed and ready for determination.

### I.  <u>Standards</u>

Defendants move for dismissal under Rule 12(b)(6), Fed. R. Civ. P.[1]  The standard for evaluating a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is well established.  Courts must accept as true all well-pleaded facts and view those facts in the light most favorable to the non-moving party.  <u>Sutton v. Utah State Sch. for Deaf and Blind</u>, 173 F.3d 1226, 1236 (10th Cir. 1999).  The court must

---

[1] Defendants also move under Rule 12(b)(1). Here, grounds offered in support of defendants' motion include the <u>Younger v. Harris</u> abstention doctrine and Eleventh Amendment immunity. Abstention doctrines permit a federal court to decline to exercise jurisdiction even though the parties satisfy all jurisdictional requirements. 17A <u>Moore's Federal Practice and Procedure</u>, p. 122-1, Scope of Chapter introduction (Matthew Bender 3d ed.).  Thus, abstention does not suggest that the court lacks subject matter jurisdiction over the dispute, only that it should abstain from exercising its jurisdiction.  Whether Eleventh Amendment immunity is a matter of federal subject matter jurisdiction is an open question.  *Id.* at § 123.20 [1].  Regardless, defendants' motion ultimately challenges the sufficiency of the complaint under Rule 12(b)(6).

construe the plaintiffs' allegations liberally because the rules require only general or notice pleading rather than detailed fact pleading, so as to do substantial justice. United States v. Uvalde Consol. Indp. Sch. Distr., 625 F.2d 547, 549 (5th Cir. 1980). A claim should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him or her to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II.  Discussion

### A.  Summary of the Complaint

Plaintiffs are Misty VanZandt and her minor child, S.V.  They have sued the State of Oklahoma *ex rel.* the Oklahoma Department of Human Services (DHS); Howard H. Hendrick, director of DHS; Mary Williams, supervisor of the Sequoyah County branch of DHS; Ruby James, case worker at the Sequoyah County branch of DHS; Joy Walker, director (or supervisor) of the Sequoyah County branch of DHS; Jan Polasek, case worker at the Sequoyah County branch of DHS; and John and Jane Does one through ten whose identities plaintiffs allege are unknown.  Each of the individual defendants are sued in their official and individual capacities.

In the introduction portion of the complaint, ¶¶ 3 and 4 summarize what are basically two related sets of events or claims.  The first set of claims revolves around Misty VanZandt and events which allegedly culminated in felony child abuse charges being filed against Ms. VanZandt.  Specifically, as this first set of claims is summarized in ¶3 of the complaint, they involve allegations that the "defendants, acting conjointly, caused plaintiff Misty VanZandt to be arrested on the stated charge of child abuse, a felony, in the District Court of Sequoyah County, Oklahoma in Case No. CF-2003-214...."  The second set of claims revolves around S.V. and events which allegedly culminated in a juvenile action involving S.V.  Specifically, as this second set of claims is summarized in ¶4 of the complaint, they involve allegations

that "the defendants, acting conjointly, have failed to protect plaintiff S.V. and have ignored defendants' own statutes and rules...[and have] further caused a juvenile action to be filed in Sequoyah County District Court in Case No. JF-2003-06 wherein [S.V.] has been separated from the lawful custody of her mother, Misty VanZandt, made a ward of the State of Oklahoma, and deprived of the care and companionship of her legal custodian." This order refers to these two related sets of allegations as plaintiffs' first and second sets of claims.[2]

Following these introductory allegations, the complaint alleges the parties' identities. (Complaint, ¶¶ 5-11). It then sets out, in detail, the alleged facts. These factual allegations begin with the allegation that S.V., who was four years old at the time, reported vaginal pain and was taken by her mother, Misty VanZandt, to the emergency room where S.V. reported that a male cousin had inserted a screwdriver in her vagina. It is alleged that later, S.V. reported that S.V.'s father's step-father had watched this act. The complaint then goes on to allege numerous details regarding S.V.'s abuse, her treatment, her improper handling by DHS, and rumors spread by defendant James and other DHS caseworkers that Ms. VanZandt was psychotic and suffered from Munchausen Syndrome by Proxy. Ultimately, the complaint alleges that DHS deliberately ignored evidence that S.V. had been physically abused, causing Ms. VanZandt to flee Oklahoma with S.V. in order to protect S.V. The complaint then alleges numerous misstatements made by defendant James in an affidavit submitted by defendant James to the Special District Court Judge in Sallisaw, Oklahoma, which

---

[2]These two sets of claims should be distinguished from the numbered claims which the complaint labels as "counts" one through five and which allege plaintiffs' various theories of liability. This order uses the term "set(s) of claims" when referring to its two groupings of the underlying facts and events which plaintiffs allege in ¶¶ 1-25 of the complaint in support of each of their five theories of liability. This order uses the term "count" when referring to the various theories of liability alleged in ¶¶ 26-36 of the complaint.

is alleged to have resulted in felony child abuse charges being filed against Misty VanZandt.  (All of the above, complaint, ¶¶ 12-25.)

After this detailed description of events, ¶ 25 restates the allegations that DHS employees made deliberate misstatements which caused the felony charges to be filed against Misty VanZandt and caused S.V. to be taken from Ms. VanZandt's custody. Paragraph 25 alleges that although the true facts were known, and that although defendants knew the affidavit referred to above was false, that this and other conduct was undertaken in order to protect certain persons in Sequoyah County.  Paragraph 25 also adds allegations regarding the second judicial proceeding which is relevant here, the juvenile action in Sequoyah County District Court involving S.V. Elaborating upon the juvenile action, ¶ 25 alleges that although a Pittsburgh County DHS worker investigated the matters involving Misty VanZandt and S.V. and confirmed the falsity of the statements made in support of the felony charges against Ms. VanZandt, and that although the investigator completed her work in February of 2006, defendants have taken no steps "to stop proceedings, correct problems, or exercise any meaningful supervisory authority" so that "S.V. is now a ward of the State of Oklahoma." Finally, ¶ 25 alleges that the defendants were "further aware that many DHS caseworkers, in Sequoyah County and elsewhere in Oklahoma, were inadequately educated and trained" and that defendants "did not establish effective training or oversight programs to prevent civil rights abuses by DHS employees."

The next section of the complaint, labeled "Claims," consists of plaintiffs' various theories of liability which are alleged against different combinations of defendants as counts one through five.  (All preceding paragraphs, including the first 25 paragraphs of factual allegations, are incorporated in each of these five counts.) In count one, plaintiffs allege § 1983 claims under the First, Fourth and Fourteenth Amendments of the United States Constitution, against defendants James, William,

Walker and Polasek.[3]  In count two, plaintiffs allege §1983 claims under the Fourth and Fourteenth Amendments of the United States Constitution against defendants DHS, Hendrick, Williams and Walker.  In count three, plaintiffs allege false arrest and imprisonment, and intentional infliction of emotional distress against defendants James and Williams.[4]  In count four, plaintiffs allege libel and slander claims against defendants James and Williams.  In count five, plaintiffs allege false light invasion of privacy claims against defendants James and Williams.  Thus, all of the federal claims are alleged in counts one and two, and the state law claims are alleged in counts three, four and five.

The complaint concludes with a request for three types of relief (in addition to attorneys' fees and costs):  1) an award of compensatory damages against the individual defendants, jointly and severally; 2) an award of punitive damages against defendants James and Williams, and 3) "an injunction...against the Department of Human Services requiring it to protect S.V."  (Complaint, prayer for relief.)

## B.  Summary of the Parties' Arguments

Defendants' first argument is that the complaint should be dismissed under the Younger v. Harris abstention doctrine.  Plaintiffs respond that Ms. VanZandt is not a party to any case in state court addressing the violation of her rights.  Plaintiffs also state that S.V. is the subject of the state juvenile action, but that the state, through

---

[3]Counts one and two also allege § 1983 claims based on violation of the Oklahoma Constitution.  However, to establish a claim under § 1983, a plaintiff must allege a deprivation of a federally protected right under color of state law.  Malek v. Haun, 26 F.3d 1013, 1015 (10th Cir. 1994), emphasis added.  Accordingly, plaintiffs' claims for violation of the Oklahoma Constitution which are alleged under § 1983 are **DISMISSED** for failure to state a claim.

[4]The title of count three refers to a claim for malicious prosecution, however, plaintiffs clarified in their briefing that they did not intend to bring a malicious prosecution claim.  The court finds that any such claim has been dropped.

DHS, has failed to protect S.V. from her abusers and has deliberately planned to place S.V. with her abusers, so that abstention should not apply.

Defendants next argue that plaintiffs cannot recover from DHS and the individual defendants to the extent they are sued in their official capacities, because these defendants are immune from suit under the Eleventh Amendment of the United States Constitution.  Plaintiffs respond by arguing that they seek prospective injunctive relief only with respect to these official defendants, requiring these defendants to follow the law.

Defendants next argue that to the extent the individual defendants are sued in their individual capacities, these individuals are entitled to qualified immunity. Plaintiffs respond that these defendants are not entitled to immunity because their actions were non-testimonial and non-discretionary, were under color of law, were contrary to well settled law, and were willful or grossly negligent or deliberately indifferent or known to the supervisor who did not act to correct the situation.

Defendants next argue that all of plaintiffs' claims are barred by limitations. Plaintiffs respond that the constitutional violations against Ms. VanZandt were not discovered by Ms. VanZandt until she was arrested, less than two years before the filing of this action.  Plaintiffs argue that all other violations, i.e. the wrongful conduct related to the juvenile action involving S.V, occurred since Ms. VanZandt was released from jail in December of 2005 or is on-going.

Finally, defendants argue that plaintiffs' request for injunctive relief is too broad and speculative, and that it should be dismissed on that ground.  Plaintiffs argue that the requested injunctive relief is warranted.

This order first addresses the above grounds for dismissal only to the extent that they challenge plaintiffs' federal claims, i.e. plaintiff's § 1983 claims.  This order takes up the viability of plaintiffs' federal claims to the extent that those claims arise

out of plaintiffs' first set of alleged facts, that is, to the extent that they arise out of facts and events which plaintiffs allege culminated in felony charges being brought against Misty VanZandt in Sequoyah County District Court.  (Part C, below.)  After that, this order takes up the viability of plaintiffs' federal claims to the extent that they arise out of plaintiffs' second set of alleged facts, that is, to the extent that they arise out of facts and events concerning the manner in which DHS and its employees have conducted themselves in relation to issues concerning the care and custody of S.V., issues which are currently being litigated in the juvenile deprived child proceedings pending in Sequoyah County District Court.  (Part D, below.)

  C. <u>Defendants' Challenges to Plaintiffs' First Set of Federal Claims</u>
<u>(Section 1983 Claims Arising out of Events Which Culminated in</u>
<u>Felony Charges Against Misty VanZandt).</u>

  1. <u>Younger v. Harris Abstention</u>

   The complaint alleges a series of events and misconduct by the defendants, culminating in Ms. VanZandt being charged and arrested on felony child abuse charges in Sequoyah County, Oklahoma, Case No. CF-2003-214.  The complaint further alleges that these charges were ultimately dropped.  Accordingly, the face of the complaint establishes that there are no currently pending felony charges against Ms. VanZandt.  For this reason, the court finds and concludes that the <u>Younger v. Harris</u> abstention doctrine does not apply to any of plaintiffs' federal claims which are based on conduct leading up to, regarding, or culminating in the felony charges which were ultimately filed against Ms. VanZandt.  *Cf.*, <u>Younger v. Harris</u>, 401 U.S. 37 (1971) (allowing federal court to abstain when state government is  party to state criminal litigation); <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 604 (1975) (expanding doctrine to apply when the state is a party and where federal intervention in civil proceedings would be as inappropriate as in state criminal proceedings).  Accordingly,

the <u>Younger</u> abstention doctrine does not entitle defendants to dismissal of plaintiffs' federal claims that arise out of the felony charges brought against Ms. VanZandt.

## 2. <u>Immunity</u>

### a. <u>Eleventh Amendment Immunity</u>

With respect to defendants' Eleventh Amendment immunity arguments, plaintiffs appear to agree with defendants, as does the court, that the Eleventh Amendment is a bar to this action to the extent that this action is brought against DHS, and to the extent that this action seeks any relief other than prospective equitable relief from state officials sued in their official capacities. *See*, <u>ANR Pipeline Co. v. Lafaver</u>, 150 F.3d 1178, 1187-88 (10th Cir. 1998) (explaining *ex parte <u>Young</u>* exception to Eleventh Amendment immunity which allows a party to sue state officials in their official capacity seeking only prospective equitable relief in certain circumstances as opposed to any form of money damages or other legal relief). Although plaintiffs' response brief states that they seek only prospective equitable relief from the individuals sued in their official capacities under §1983, the complaint does not, in fact, limit the relief requested from these officials in this manner. Accordingly, DHS and the individual defendants, to the extent they are sued in their official capacities, enjoy Eleventh Amendment immunity and they are entitled to dismissal of plaintiffs' first set of federal claims to the extent that plaintiffs seek any relief beyond prospective equitable relief on those claims. Here, plaintiffs' first set of § 1983 claims arise out of the events which led to or culminated in the filing of felony charges against Misty VanZandt, and the complaint makes it clear that those charges have now been dropped. (¶ 23.) Accordingly, there is no prospective equitable relief which could now be granted with respect to these claims. The result is that the individual defendants sued in their official capacities are entitled to dismissal of plaintiff's first set of federal claims, on Eleventh Amendment immunity grounds.

b. Qualified Immunity

Much of defendants' argument regarding qualified immunity revolves around the proposition that defendants are entitled to qualified immunity with respect to their actions in the deprived child proceedings.[5]  Assuming defendants' qualified immunity arguments were meant to challenge plaintiff's first set of federal claims based on the felony charges against Ms. VanZandt as well, this order now addresses the qualified immunity challenge to plaintiffs' first set of federal claims.

When a public official raises a claim of qualified immunity, the burden shifts to the plaintiff to show that the defendant is not entitled to that immunity.  Douglas v. Dobbs, 419 F.3d 1097, 1100  (10th Cir. 2005).  When a qualified immunity challenge is made at the motion to dismiss stage, there are two distinct inquiries: whether the facts, as pled by the plaintiff, set forth a constitutional violation;  and whether the alleged violation of constitutional law was clearly established at the time. Pierce v. Gilchrist, 359 F.3d 1279, 1284 (10th Cir. 2004).  Here, plaintiffs assert First, Fourth and Fourteenth Amendment violations.  The Complaint, however, alleges no facts to support a First Amendment claim. (Plaintiffs' response brief does not refer to

---

[5]As defendants' state at the beginning of the pertinent portion of their moving brief:

> Even if one assumes all of the allegations contained in the Plaintiffs' complaint are true, the individual Defendants are entitled to qualified immunity from liability on the Plaintiffs' civil rights claims against them in their "individual" capacities.  The specific actions allegedly taken by the defendant DHS employees were undertaken in the context of an on-going deprived child case in Sequoyah County District Court and their involvement in such proceedings was merely as witnesses.

(Moving brief, p. 10.)  Defendants' moving brief also contains the statement (at p. 12), that "In any event, the individual named Defendants are entitled at a minimum to qualified immunity from liability for their actions taken in the deprived action in Sequoyah County District Court."  Thus, despite the blanket statement that they challenge all claims on qualified immunity grounds, defendants' brief is less than clear about whether they intend to challenge plaintiffs' first set of claims on grounds of qualified immunity.

any First Amendment claims.)  The court finds and concludes that there are no allegations to support a § 1983 claim based on an alleged violation of the First Amendment as a result of the conduct alleged to have resulted in the felony charges against Ms. VanZandt.  To the extent that plaintiffs' first set of claims alleges violation of the First Amendment, those claims should be dismissed on grounds of qualified immunity because the first inquiry required by the qualified immunity analysis is not satisfied.

With respect to plaintiffs' first set of federal claims based on alleged violations of the Fourth and Fourteenth Amendments,  defendants are alleged to be state actors who deliberately falsified evidence to convince prosecuting authorities there was probable cause to wrongly press felony child abuse charges against Ms. VanZandt and to arrest Ms. VanZandt on those charges.  The complaint alleges the wrongful arrest actually occurred and that Ms. VanZandt was separated from her daughter as a result, so that her daughter ultimately became a ward of the state.  The complaint alleges that defendants participated together in this conduct.  The complaint further alleges that this wrongful conduct was for the protection of certain Sequoyah County individuals.[6]

---

[6]Specifically, the complaint alleges as follows.  "[D]efendants, acting conjointly, caused plaintiff Misty VanZandt to be arrested on the stated charge of child abuse, a felony, in the District Court of Sequoyah County, Oklahoma in Case No. CF-2003-214, and to be handcuffed and transported to the Sequoyah County Jail, for bond to be denied...." (¶ 3.")  "The defendants...knew or should have known that Misty VanZandt had acted in a reasonable manner to protect the plaintiff, S.V., where the defendants had not, and there was no basis for the detention and arrest...." (¶ 3.)  "In November, 2002, after it became clear that DHS was deliberately ignoring evidence that S.V. had been physically abused, Misty fled Oklahoma with S.V. in order to protect her from further harm." (¶ 22.)  "In an effort to procure felony child abuse charges against Misty, defendant James submitted a false affidavit for use as a statement of 'probable cause'...."  Those allegedly false statements, and the reasons why plaintiff alleges defendant James knew they were false, are detailed in the complaint.  (¶ 23.)  "The defendants assigned to the Sequoyah County office of DHS mentioned above, and others in concert with them, made deliberate misstatements which caused the plaintiff Misty VanZandt to be charged with a felony and VanZandt's daughter, S.V., to be taken from her care and custody;  the true facts in this case were fully known to the Oklahoma Department

(continued...)

The court concludes that Fourth and Fourteenth Amendment constitutional violations have been alleged. *See*, Pierce, at 1285-93 (§1983 allegations that police forensics expert distorted evidence to convince prosecuting authorities to press charges, adequately stated a constitutional violation of the Fourth and Fourteenth Amendments).

The court now turns to the second part of the qualified immunity test for the Fourth and Fourteenth Amendment claims--the clearly established law at the time, test. The events which are alleged to have violated the Fourth and Fourteenth Amendments, and which resulted in the felony charges against Ms. VanZandt, occurred in 2002 and 2003. (Complaint, ¶25.) Pierce reviewed the Supreme Court and Tenth Circuit authority which was clearly established in 1986 regarding Fourth and Fourteenth Amendment violations resulting from arrest affidavit information which was provided although it was known to be false, or which was prepared with reckless disregard for the truth, or which did not include information which would have vitiated probable cause. *Id*. at 1299. The Tenth Circuit stated in Pierce that "[n]o one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986 [the date in issue in that case], in the context of information supplied to support a warrant for arrest." *Id*. at 1298.

---

[6](...continued)
of Human Services and its director, Howard Hendrick; DHS and Hendrick knew, not only from the statements of the defendants above that the allegations against Misty VanZandt and those used to initiate the juvenile actions in the District Court of Sequoyah County were false and contrived to protect certain persons in Sequoyah County...." (¶ 25.) The complaint also includes allegations regarding threats made by defendant James, however, plaintiff's brief indicates that the threats are not alleged as the basis for a constitutional violation, and that they are only alleged to show the willfulness of defendants' acts. (Response brief, p. 11.)

Moreover, a general constitutional rule that has already been established can apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful. *See*, Anderson v. Blake, __ F.3d __, 2006 WL 3291688 (10th Cir., November 14, 2006) (affirming denial of motion to dismiss for qualified immunity, restating standards and rules for use in that determination; no immunity for alleged release by police to television station of video showing plaintiff's rape, despite no Tenth Circuit or Supreme Court cases involving similar conduct). Although there are distinctions between the facts of the instant case and previous Tenth Circuit and Supreme Court decisions which pre-date the alleged events, the contours of Fourth and Fourteenth Amendment rights were sufficiently clear in 2002 and 2003 that a reasonable official engaging in, or contemplating, the conduct alleged in this action would have understood that he or she would have been acting in violation of those constitutional rights.

The court finds and concludes that the defendants' alleged conduct violated Fourth and Fourteenth Amendment law which was clearly established at the time. This determination, when combined with the court's earlier determination that the alleged conduct violates Fourth and Fourteenth Amendment law, means that the court rejects defendants' qualified immunity defense with respect to this particular set of claims, at least at this stage where the relevant well-pled allegations must be taken as true.

### 3. Statute of Limitations

The court next addresses defendants' statute of limitations argument, but again, only to the extent that this argument impacts plaintiffs' first set of claims, i.e. the claims which culminated in felony charges being brought against Ms. VanZandt.

The parties agree, and the court concurs, that the time for filing an action under § 1983 is controlled by 12 O.S. Supp. 2005 § 95(A)(3), Oklahoma's two-year statute

of limitations for personal injury actions. <u>Meade v. Grubbs</u>, 841 F.2d 1512, 1523-24 (10th Cir. 1988). In a § 1983 action controlled by the Oklahoma two-year statute, the limitations period begins to run when plaintiff either knew or should have known of the claims. <u>Easterwood v. Choctaw County District Attorney</u>, 45 P.3d 436, 440 (Okla. 2002) (§ 1983 claims barred because plaintiff "knew or should have known of those claims upon publication" of controlling Tenth Circuit decision); *see also*, <u>Samuel Roberts Noble Foundation, Inc. v. Vick</u>, 840 P.2d 619, 625 (Okla. 1992) (stating that "[t]he question then becomes: [w]hen did the Foundation know (or when should it have known) of the defects which gave rise to this lawsuit?").

As summarized at the beginning of this order, the first 23 paragraphs of the complaint allege conduct by the defendants between the dates of June 25, 2002 and May 5, 2003, which pertain to and ultimately resulted in the filing of felony charges against Ms. VanZandt. All of the conduct described in the first 23 paragraphs of the complaint is alleged to have occurred more than two years before this action was filed on July 28, 2006. Although the complaint contains many specific dates concerning the events in question, it does not allege the date on which the felony charges were filed against Ms. VanZandt. The Sequoyah County District Court docket sheet establishes that the felony charges were filed against Ms. VanZandt on May 8, 2003, a date which is more than two years prior to the filing of this action, and a date only a few days after May 5, 2003, the date on which the complaint alleges defendant James submitted a false affidavit for use as a statement of probable cause. (See, docket sheet, Sequoyah County District Court, State of Oklahoma, Case No. CF-03-00214, attached to plaintiff's response brief as Exhibit "6.")[7]

---

[7]The court may take judicial notice of facts which are of public record without converting the motion to dismiss to a motion for summary judgment. <u>Tal v. Hogan</u>, 2006 WL 1775371, *19 (10th Cir. 2006).

The court cannot conclude as a matter of law, however, that plaintiff knew or should have known about the alleged false statements and other conduct which resulted in  the felony charges, on the date the criminal charges were filed.  The complaint does not allege a date when Ms. VanZandt became aware of the charges against her.  There are no allegations which would allow the court to conclude that Ms. VanZandt should have been aware of the charges or of the wrongful conduct underlying those charges, as a matter of law, more than two years before this action was filed.  The complaint does allege that Ms. VanZandt was arrested on those charges in Gladewater, Texas, on October 27, 2004, but that date is within two years of the filing of this action on July 28, 2006.

Accordingly, the court cannot conclude that plaintiffs' first set of federal claims are  necessarily barred by limitations.  Defendants are not now entitled to dismissal of those claims on limitations grounds.  If the record, at the summary judgment stage, supports further consideration of the limitations issue, that can be done at the appropriate time.

### 4. Failure to Train, Educate and Supervise Theories of Liability

The second count of the complaint alleges plaintiffs' § 1983 claims based on theories of failure to train, educate and supervise.  Although these allegations are rather conclusory, the complaint, read as a whole, details the alleged misconduct of the DHS defendants, it suggests a pattern of misconduct, and it alleges that the supervisory defendants were deliberate in their actions because these defendants knew the allegations against Misty VanZandt "were false and contrived to protect  certain persons in Sequoyah County."  (Complaint, ¶ 25.)  In these circumstances, the court finds that the § 1983 claims which allege a failure to supervise and failure to train employees which resulted in the felony charges against Ms. VanZandt, are sufficient.  *See*, Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988) (allegations that sheriff

customarily failed to properly supervise his deputies, that he was deliberately indifferent to plaintiff's constitutional rights, and that at least three of his deputies participated in the assault, were held sufficient to allege a § 1983 claims against the sheriff in his individual capacity for failure to train and supervise deputies).

### 5. Request for Injunctive Relief

Defendants' last ground for dismissal is that the complaint's request for injunctive relief is too broad and that it is otherwise inappropriate. As stated in the prayer, plaintiffs ask the court for an injunction against DHS "requiring it to protect S.V." (Complaint, p. 11.) This request for relief is not material to plaintiffs' first set of federal claims, which is the only set of claims under consideration at this point in this order. Accordingly, the court does not address defendants' arguments regarding the improper nature of the requested injunctive relief, except to say that this particular argument affords no ground for dismissal of plaintiffs' federal claims to the extent that they arise out of, or culminate in, the felony charges filed against Misty VanZandt.

### D. Defendants' Challenges to Plaintiffs' Second Set of Federal Claims
#### (Section 1983 Claims Concerning Defendants' Conduct
#### In Relation to the Care and Custody of S.V.
#### Especially Defendants' Conduct in Juvenile Proceedings Regarding S.V).

### 1. Younger v. Harris Abstention.

The balance of plaintiffs' federal claims are what the court has referred to as plaintiffs' second set of federal claims, that is, plaintiff's § 1983 claims based on the second set of alleged facts and events, which are the facts and events concerning defendants' conduct in relation to the care and custody of S.V. including defendants' conduct in juvenile proceedings involving S.V. which are currently pending in Sequoyah County District Court as Case No. JF-03-06. (These proceedings are

referred to by the parties in their briefs, and by the court in this order, as juvenile proceedings or as deprived child proceedings.)

The complaint makes clear that S.V. is a party in those state court proceedings, a fact of which this court takes judicial notice in any event. The complaint also makes clear that these state court juvenile proceedings are on-going. Moreover, the complaint asks for relief which presumes that this court would interfere in those proceedings. For example, the complaint complains that "DHS, its director Hendrick, and others at DHS have not taken any steps to stop proceedings" (complaint, ¶ 25) and the complaint asks "[t]hat an injunction issue against the Department of Human Services requiring it to protect S.V." (Complaint, prayer at p. 11.)[8]

Under the <u>Younger</u> abstention doctrine, federal courts should not interfere with state court proceedings by granting equitable relief such as injunctions of important state proceedings, or declaratory judgments regarding constitutional issues in those proceedings, when a state forum provides an adequate avenue for relief. <u>Weitzel, M.D. v. Division of Occupational and Professional Licensing of the Department of Commerce of the State of Utah</u>, 240 F.3d 871, 875 (10th Cir. 2001). Indeed, <u>Younger</u> abstention is non-discretionary; the district court must abstain once the conditions are met, absent extraordinary circumstances. *Id*. Those conditions are as follows. A federal court must abstain when (1) there is an on-going state criminal, civil, or administrative proceedings, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies. *Id*.

---

[8]The court also notes, but does not rely on the parties' statements that there are on-going divorce proceedings in which the care, custody, and bests of interests of S.V. are also being litigated, and that those proceedings are styled <u>Misty VanZandt v. Tregg A. VanZandt</u>, Case No. FD-2002-203 in Sequoyah County District Court.

All three of the <u>Younger</u> abstention criteria are met here.  (1). S.V. is the subject of state court proceedings which, by state statute, are for the purpose of protecting her. *See*, 10 O.S. 2001 § 7001-1.2(B) (the paramount consideration in all proceedings concerning a child alleged or found to be deprived is the health and safety and the best interests of the child).  (2). The state proceedings provide an adequate forum to hear S.V.'s federal claims. <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S.1 (1987) (when plaintiff has not satisfied his burden to show that state procedural law barred presentation of his federal claims in related state court proceedings, a federal court should assume that state procedures will afford an adequate remedy in the absence of unambiguous authority to the contrary);  *see also*, Oklahoma Constitution, Article VII, § 7(a), granting state courts unlimited original jurisdiction of all justiciable matters; <u>McLin v. Trimble</u>, 795 P.2d 1035 (Okla. 1990) (Oklahoma state court deciding § 1983 actions).  (3). Important state interests traditionally governed by state law are at stake in this case, those being the manner and operation of Oklahoma's child welfare system. *See*, *generally,* <u>Shuler v. Meredith</u>, 144 Fed. Appx. 24, 26 (11th Cir. 2005) (district court did not abuse its discretion in dismissing complaint under the <u>Younger</u> doctrine, where there was no evidence in the record that plaintiff ever asserted in state court proceedings his constitutional claims regarding the state's failure to notify him and to allow him to participate in several state court proceedings, shelter placements, case plans, and judicial review hearings related to the placement of his three minor children in foster care after their mother died; plaintiff also asserted government caseworkers gave materially false information in the official proceedings which violated his due process rights); and <u>Liedel v. Juvenile Court of Madison County, Alabama</u>, 891 F.2d 1542, 1546 (11th Cir. 1990) (under <u>Younger</u>, federal district courts may not interfere with on-going child custody proceedings).

There is no reason why the state district court is not fully equipped to hear and determine plaintiffs' second set of federal claims in the context of the on-going deprived child proceedings.  Furthermore, the complaint's allegations and requests for relief with regard to the defendants' handling of the deprived child proceeding in Sequoyah County, were this court to find them viable here, would require this court to improperly interfere with those state court proceedings.[9]    Fundamental considerations of comity which the Younger doctrine protects would be violated, were this court to allow plaintiffs to continue in this court, at this time, with their federal claims arising out of plaintiffs' second set of factual allegations, based, as that second set of claims is,  on defendants' challenges to the manner in which DHS and DHS employees have conducted themselves in the on-going proceedings in Sequoyah County District Court.

Accordingly, it is clear from the face of the complaint that to the extent plaintiffs' federal claims arise out of plaintiffs' second set of factual allegations, that is, to the extent they are based on plaintiff's allegations that the defendants are not proceeding properly with respect to matters pertaining to the care and custody of S.V., matters which are currently pending before the Sequoyah County District Court, plaintiff's claims must be dismissed under Younger.

---

[9]Although not a basis for the court's decision in this regard, the court notes plaintiffs' statements in their briefing that "[t]he juvenile court refuses to conduct an evidentiary hearing" (response brief, p. 7), and that the juvenile court judge has stated "that she *believed* she had read the Weaver report."  (Response brief, p. 6, emphasis in plaintiffs' brief).  These statements confirm plaintiffs' understanding that the complaint, to the extent that it seeks redress of plaintiffs' federal constitutional rights violated as a result of facts related to or culminating in the deprived child proceedings, seeks a type of relief which would improperly involve this court in the on-going juvenile proceedings.

## 2. Defendants' Other Arguments

The above determination makes it is unnecessary to consider defendants' other challenges to plaintiffs' second set of federal claims. Furthermore, after dismissal from this action, these § 1983 claims may be asserted in the state court or they could conceivably be alleged as a new action in this court when the state court proceedings are no longer pending, assuming they are not then barred by limitations. Thus, any further comment on the merit of those claims, or on the merit of defendants' challenges to them on the pleadings, would be inappropriate.

## E. Plaintiffs' State Law Tort Claims

The only other claims which this order has not yet addressed are plaintiffs' state law tort claims. These claims are alleged in counts three through five of the Complaint. They include claims of false arrest and imprisonment, intentional infliction of emotional distress, libel, slander and false light invasion of privacy.

To the extent these state tort claims arise or result from the events which also give rise to plaintiffs' first set of federal claims (the claims arising from the events leading up to and culminating in Ms. VanZandt's arrest on felony charges), proceeding with these claims would appear to be appropriate under the court's supplemental jurisdiction. To the extent that these state tort claims arise out of events which are still unfolding in the deprived child proceedings in Sequoyah County District Court, however, proceeding on these tort claims is problematic given comity concerns.

Because the complaint alleges all theories of liability as arising from the same facts and events which are alleged in support of all counts, it is impossible for the court to separate which, if any, state law claims might properly proceed in this court, from state law claims which should not proceed in this court at this time. Accordingly, if plaintiffs wish to continue to press any state law claims in this action,

they are **DIRECTED** to file an amended complaint which separately sets out which specific facts are alleged in support of each and every state law claim.[10]

If an amended complaint is filed, it must also re-allege plaintiffs' federal claims but only to the extent that those claims have survived this order.  If, after receipt of any amended complaint which may be filed, defendants wish to move to dismiss any of the state law claims based on arguments that have not already been rejected by the court in this order, they may do so in the ordinary course.  If an amended complaint is not filed,  the state law claims will be deemed voluntarily dismissed and this action will be set for status and scheduling conference.

### III.  Rulings

After careful consideration of the pleadings, the parties' submissions, matters of public judicial record, and the relevant legal authorities, defendants' motion to dismiss is **DENIED** in part and **GRANTED** in part, as follows.

1.  All of plaintiffs' claims alleged under 42 U.S.C. § 1983 for violation of the Oklahoma Constitution (in counts one and two) are **DISMISSED** with prejudice for failure to state a claim. (See n.3, *infra*.)  The balance of plaintiffs' federal claims are treated below, as two sets of claims.

2.  With respect to plaintiffs' first set of federal claims--that is, §1983 claims arising out of events which led to or culminated in the filing of felony child abuse charges against Misty VanZandt--the court rules as follows.

---

[10]The court recognizes that it is unusual to require such precise pleading at this stage.  Given the complexity of this action and the important concerns regarding comity and ripeness which are presented by any state law claims which arise out of or relate to the on-going proceedings in Sequoyah County District Court, the court  finds that, in these exceptional circumstances, such specificity is essential.  Accordingly, any state law claims which are re-alleged without the required specificity are subject to being dismissed without prejudice, without further comment.

(a.)  Based on Eleventh Amendment immunity, defendants' motion is **GRANTED** with respect to such claims, to the extent that such claims are alleged against the State of Oklahoma, ex rel. Oklahoma Department of Human Services and against the individual defendants sued in their official capacities.  Plaintiffs' first set of federal claims is **DISMISSED** with prejudice to the extent that those claims are alleged against DHS and the individual defendants in their official capacities.

(b.)  Defendants' motion is **GRANTED** with respect to plaintiffs' first set of federal claims based on violations of the First Amendment, to the extent that these claims are alleged against the individual defendants in their individual capacities.  These First Amendment claims are **DISMISSED** because  the complaint alleges no First Amendment constitutional violation so that the individual defendants enjoy qualified immunity with respect to these First Amendment claims.

(c.)  To the extent that plaintiffs' first set of federal claims is alleged against the individual defendants in their individual capacities and allege violations of the Fourth and Fourteenth Amendments, defendants' motion to dismiss is **DENIED**.  The individual defendants' request for qualified immunity is denied with respect to these claims at this stage. These particular § 1983 claims survive this order and continue to pend in this court.

3.  Defendants' motion is **GRANTED** with respect to plaintiffs' second set of federal claims--that is, § 1983 claims that arise from and would require this court to involve itself in the on-going deprived child proceedings in Sequoyah County District Court.  This set of federal claims is **DISMISSED** without prejudice because the court abstains from hearing these claims under Younger v. Harris.

4.   This order makes no ruling with respect to defendants' challenges to plaintiffs' state law tort claims.  If plaintiffs wish to pursue any state law claims in this action, they are **DIRECTED** to file an amended complaint which re-alleges only the federal claims which survive this order and any state law tort claims which plaintiffs wish to press (that filing to be made, of course, without prejudice to the plaintiffs' right to appellate review of the court's action, in this order, with respect to those claims that are dismissed or otherwise adversely affected by this order).  The state law tort claims must be alleged with particularity, in the manner described in the text of this order, or they will likely be dismissed.  Any such amended complaint must be filed within twenty days of the date of this order.  Nothing stated in this order is intended to prevent plaintiffs from pursuing their state law claims in state court.

Dated this 20th day of November, 2006.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0809p008(pub).wpd